UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN LINAREZ-DIAZ (A-Number: 222-557-350),

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY,

Respondent.

Case No. 1:26-cv-6342-TLN-JDP

FINDINGS AND RECOMMENDATIONS

In 1997, petitioner Juan Linarez-Diaz, a citizen of Mexico, entered the United States without inspection. On April 30, 2026, ICE detained petitioner after a DUI arrest. He has been detained since that date without a bond hearing. Petitioner, appearing pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his detention without a bond hearing violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner, a citizen of Mexico, entered the United States without permission in 1997. ECF No. 1 at 6. He indicates that he was detained for a few hours, then "released," and that he has "built . . . a life in the U.S. since [his] initial release." *Id.* Petitioner alleges that he has been living in the United States for 29 years. *Id.* He is married and has a twenty-year-old daughter

who is a United States citizen. *Id.*

Respondent does not contest any of petitioner's factual assertions but attaches a Form I-213 indicating that on January 24, 1989, petitioner was denied a border crossing card under a different A-number for which respondent possesses no file. ECF No. 7-1 at 2. The Form I-213 quotes petitioner as stating that he entered the United States on or about January 21, 1999. *Id.* I cannot determine from the Form I-213 if petitioner was previously detained and released by immigration authorities. The Form I-213 does confirm that petitioner has "1 USC daughter over 18 years old." *Id.* at 3.

On April 29, 2026, local authorities arrested petitioner for a DUI. ECF No. 7-1 at 2; ECF No. 7-2 at 7. It appears that adjudication is pending for that offense. ECF No. 7-2 at 7. The local jail released petitioner to immigration custody on April 30, 2026. ECF No. 7-1 at 2. ICE took petitioner into custody under 8 U.S.C. § 1225(b)(2)(A). ECF No. 7 at 1. ICE has detained petitioner since that date without a bond hearing. ECF No. 1 at 6. The EOIR automated case information indicates that petitioner's individual hearing is on September 30, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation (last checked Aug. 31, 2026).

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that his detention without a bond hearing violates the law.[1] ECF No. 1 at 6. Respondent states that petitioner was detained under 8 U.S.C. § 1225(b)(2)(A) and is therefore subject to mandatory detention without a bond hearing. ECF No. 7 at 1. Respondent cites no law supporting this assertion and recognizes that the Court of Appeals, in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026), has rejected this position. *Id.*

In *Rodriguez Vazquez*, the Court of Appeals held that 8 U.S.C. § 1226(a), not section 1225(b), applies to noncitizens like petitioner who entered without inspection and are detained by ICE in the interior of the United States. *See Rodriguez Vazquez*, 183 F.4th at 1165.[2] I cannot determine whether petitioner was previously released into the United States after being held in custody by immigration authorities. Petitioner says that he was detained for a "few hours" and released in 1997. ECF No. 1 at 6. Respondent does not contest this assertion but attaches a Form I-213 that indicates that petitioner came into the United States in 1999 and is silent regarding any prior detention and release. ECF No. 7-1. Rather than order additional briefing on this issue, I address whether petitioner's detention under section 1225(b) without a bond hearing violates the law.

Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). Critically, no bond hearing is provided for a noncitizen detained under this section. *Id.* By contrast, "[u]nder § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

---

[1] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

[2] Because the mandate has yet to issue, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41.

For decades, the government applied section 1226(a)—and not section 1225(b)(2)(A)—to noncitizens apprehended in the interior of the United States. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). In July 2025, however, the Department of Homeland Security ("DHS") revisited its legal position and now maintains, as in this case, that applicants for admission within the meaning of section 1225(a) are subject to mandatory detention under section 1225(b).

This issue is one of statutory interpretation, and so I begin with the plain text of the Immigration and Nationality Act. *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019). Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). There is only one exception to mandatory detention: a noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

While the text of section 1225(b)(2)(A) limits its reach to applicants "seeking admission," section 1226(a) does not include the same qualifying language. Section 1226(a) provides that, for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."[3] 8 U.S.C. §§ 1226(a)(1)-(2).

Respondent affirms that it detained petitioner pursuant to section 8 U.S.C. § 1225(b). ECF No. 7 at 1. It concedes that under *Rodriguez Vazquez* the proper detention authority should have been 8 U.S.C. § 1226(a). *Id.* I find that the government's interpretation of section 1225 and application of that section to petitioner violates the rule against surplusage in three ways. First,

---

[3] Section 1226(c) mandates detention of noncitizens falling into "one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289. There is no argument or evidence suggesting that this section applies to petitioner.

for section 1225(b)(2)(A)'s mandatory detention to apply, "a noncitizen must (1) be an applicant for admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal. Oct. 16, 2025). If, as the government argues, all "applicants for admissions" were also individuals "seeking admission," the phrase "seeking admission" would be unnecessary. The government's reading, therefore, runs contrary to the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.").

Second, the government's reading cannot be squared with the text of section 1226. Were it possible to interpret section 1225(b)(2)(A) in the manner favored by the government, section 1226(a)'s requirement that noncitizens be afforded bond hearings—arguably the section's centerpiece—would serve no purpose because the government would be allowed to detain all "applicants for admission" under section 1225(b)(2)(A). Further, as noted, under section 1226(c), Congress mandated the detention of certain categories of noncitizens. 8 U.S.C. § 1226(c). If, as the government now contends, section 1225(b)(2)(A) can be applied to all noncitizens who are inadmissible, section 1226(c) would also be superfluous.

Third, the Laken Riley Act ("LRA")—passed in January 2025—would also be rendered superfluous. The LRA amended section 1226(c) to add new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-2180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025). Under the government's theory of section 1225(b)(2)(A), the LRA would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225(b)(2)(A), the amendment would be surplusage. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Respondent's theory, essentially, is that both sections 1226(a) and 1226(c) have been taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy. This interpretation collides squarely with the rule against surplusage. *See Marx v.*

*Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

I also find that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025. As noted, the government previously interpreted these provisions in the manner argued by petitioner. Prior agency practice, though not dispositive, may inform this court's determination of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). Other courts have emphasized the persuasive value of the DHS's "longstanding agency practice." *See Rodriguez*, 779 F. Supp. 3d at 1259 ("Congress enacted the LRA against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, I note that arguments substantially similar to those made by the government here have been rejected by a large majority of district courts nationwide. *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases). The government's argument also runs contrary to *Jennings*, which held that section 1225(b) "applies primarily to aliens seeking entry into the United States," whereas sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." 583 U.S. at 289, 297. While the government's interpretation was endorsed by the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), the persuasive power of an agency ruling is limited. *See Loper Bright*, 603 U.S. at 400.

Petitioner was arrested inside the United States after living here since at least 1999. Respondent concedes that petitioner's detention falls under *Rodriguez Vazquez.* ECF No. 7 at 1. In other words, while the government continues to argue that petitioner is an "applicant for admission" under immigration law, it recognizes that binding authority does not support this position. Accordingly, I find that petitioner's detention is governed by section 1226 and not, as respondent advances, by section 1225.

Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 7. Respondent indicates petitioner "is entitled so seek a custody

redetermination hearing before an immigration judge." ECF No. 7 at 1. Respondent does not explain how petitioner—whom ICE detained under section 1225(b), which does not permit a bond hearing—is nonetheless "entitled" to request such a hearing.[4]

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered immediate release. *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025); *Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP, 2026 WL 2494984, at * 3 (E.D. Cal. Aug. 25, 2026); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-5661-DAD-SCR, 2026 WL 2294963 (E.D. Cal. Aug. 10, 2026). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Here, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for petitioner's detention without a bond hearing. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the provision of a bond hearing is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1. Petitioner has been living in the United States for at least 27 years. He is married, has a twenty-year-old daughter who is a United States citizen, and has "built a life here." ECF No. 1 at 6. Furthermore,

[4] In *Matter of Yajure Hurtado*, the BIA held that immigration judges lack jurisdiction to hear a request for bond where the noncitizen is detained under section 1225(b)(2)(A). 29 I. & N. Dec. at 228-29. As noted, respondent asserts that petitioner is detained under this section. ECF No. 7 at 1. Respondent offers no assurances that, if petitioner requested a bond hearing, an immigration judge would have the authority to provide him one. *See id*.

while petitioner's criminal history shows a conviction for a DUI in 2020 and the pending DUI charge, respondent does not argue that petitioner is a danger to the community or a flight risk. *See* ECF No. 7-1 at 2. Moreover, "the only potential injury that the government faces is a short delay in detaining [petitioner] if it ultimately demonstrates to a neutral decisionmaker that [his] detention is necessary to prevent flight or danger to the community." *See Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 941 (N.D. Cal. 2025) (internal quotation marks and citation omitted).

Accordingly, I recommend that petitioner be immediately released.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 222-557-350) from its custody. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter in accordance with 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See*

*Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: September 2, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE